Our next case for this morning is Kathy Fisher against Acting Commissioner Berryhill. Mr. Richter. Thank you, Your Honors. May it please the Court. Matt Richter on behalf of Plaintiff Appellant Kathy M. Fisher. The fundamental question before the Court today is whether the Administrative Law Judge constructed a logical and accurate bridge between the evidence in the record and the conclusions he made. And the record demonstrates that time and time again, whether with regard to the assessment of the medical opinions in the record or to Ms. Fisher's own credibility generally, he failed to support his conclusions with reason and substantial evidence. Mr. Richter, are you challenging the ALJ's conclusions regarding the carpal tunnel syndrome? I couldn't tell from your submission. That was sort of a side argument, Your Honor. It just sort of supported the general nature of his dismissing certain limitations without a substantial basis. Because there didn't seem to be any evidence, or if there was, I missed it, that the carpal tunnel syndrome was still a problem after the 2012 surgery. And if I missed it, please identify it. No, there's no major limitation based on the carpal tunnel surgery. It was just that I think he made a declarative statement that she never had any issues ever with carpal tunnel, and that wasn't the case. First, as it relates to the treating neurologist of many years, Dr. Natarajan, the ALJ not only needed to provide a logical and accurate bridge in dismissing that opinion, but due to the fact that Dr. Natarajan had treated Ms. Fisher for many years, he was obligated to provide good reason for affording that opinion no weight. So one of the things you point out is the contradiction between the ALJ's statements about decompensation, that she has an episode of that, but then he says there are no episodes. I think you may be referring to another one of today's social security cases, Joanna. But are you really relying more on her sarcoidosis and the diabetes, or is this more something else? This is mostly based in the sarcoidosis and the neuropathy caused by either the sarcoidosis or the diabetes in her. Right, she's got a diabetic neuropathy. Right, somewhere in the abdominal area, the Cleveland Clinic had determined that much of her abdominal pain was being caused by permanent nerve damage from either the sarcoidosis or the diabetes. And Dr. Natarajan agreed with that sentiment in treating Ms. Fisher. The first reason that the ALJ gave for dismissing Dr. Natarajan's opinion was that it was vague. And in doing so, the ALJ first called it vague, saying that Dr. Natarajan had used specific language, saying that she would be off-task, dependent on her pain. First of all, Dr. Natarajan did not use that phrase. Dependent on, yeah. And I believe Commissioner acknowledged that. But as to the other language, when Dr. Natarajan is estimating periods of time that she would be off-task or absences, that's typical for any medical assessment in a social security case. I mean, it's every medical opinion given at some level is an estimation of a person's limitations. It's no more vague than the state agency physician saying, finding that Ms. Fisher could stand for about six hours or sit for about six hours. If Dr. Natarajan's opinion was too vague for any weight, then the state agency physician's opinion was certainly too vague to be relied upon in assessing the residual functional capacity. So what about the fact that she had been working through part of the period that Dr. Natarajan is talking about? Okay. So that period of time was before she alleged disability. And I think what the ALJ was getting at there was Dr. Natarajan said in her opinion that she filed that the limitations she assessed applied even back to before the time that Ms. Fisher stopped working and applied for disability benefits. So that period of time, Ms. Fisher was working, but she was missing substantial amounts of work, being granted FMLA, I believe, for medical leave to treat her sarcoidosis issues. And so in addition to not being a period of time in which Ms. Fisher is alleging disability, it also appears to be consistent with the opinion that she would miss work from time to time and that that wouldn't be sustainable. There is medical evidence in the record that your client had several visits with a doctor that didn't show any serious problems. How does that fit in here? So one of the issues is that the ALJ didn't consider the nature of the sarcoidosis, relying very heavily on a PET scan also before the claimant alleged disability that showed her sarcoidosis was in remission. The problem is that sarcoidosis is a waxing and waning condition. It does go into remission. It does come back, and it did. There's quite a bit of objective evidence in the record that shows she had flares. She was developing new skin lesions, always complaining of pain in the abdomen and in her joints. When she went to the Cleveland Clinic, they found granulomatous disease in several of her organs, her lungs. And so that was certainly causing her some difficulty. How is an ALJ supposed to look at a condition that waxes and wanes? An ALJ is supposed to consider the nature of that, I think, and whether that waxing and waning, that nature of the disease would be consistent with Dr. Natarajan's opinion that she would have good days and bad days, and bad days would generally lead to absences from work or time off task to treat the issues that she was facing. So doesn't that then get incorporated into the hypothetical, and such a person would be absent from work four days a month or whatever the number the ALJ deduced from this? Exactly, Your Honor. It should have been included in the hypothetical to the vocational expert to find out how many absences would be tolerated by an employer, how much time off task would be tolerated by an employer. That really didn't seem to occur here. And if it had, it likely wouldn't have mattered, because ultimately the judge went with an RFC that didn't reflect any absences or time off task. So that was really the main error there. Okay. Well, if you want to save a little time, we're about there. Sure, Your Honor. Okay. Thank you. Ms. Cohen. Thank you. May it please the Court, Emily Cohen on behalf of the Acting Commissioner in this case. Your Honors, Ms. Fisher essentially disagrees with the ALJ's assessment of the evidence. The ALJ gave many reasons to which she decided that Ms. Fisher could maintain a medium level of work with handling and fingering restrictions. The ALJ's decision was supported by substantial evidence, and it is this Court's job to review the ALJ's decision as a whole, not reweigh the evidence in substitution of the ALJ. Do you think somebody who can take a shower every day and prepare a meal three times a week and go grocery shopping twice a month can sustain eight hours a day, five days a week of work? Well, Your Honor, the ALJ considered Ms. Fisher's subjective reports of that nature. That's what I'm reading from page six of the ALJ's opinion. The first functional area is activities of daily living, and the ALJ puts down what I just said. And it seems to me quite a leap from the activities that the ALJ has recorded here to the notion that this supports the finding that the claimant, as she says, that he claimant has no limitation in her activities of daily living. That's a very modest amount of activity. Your Honor, it is, compared to other cases that we've seen, certainly not the most robust activities. The ALJ's finding in this particular case on page six of his decision goes to her affective disorder and the severity of her affective disorder, something that Ms. Fisher did not argue at all in front of the district court, and we would submit has waived that particular issue. But it surely, in terms of activities of daily living, also tells you what is she physically able to do. A little bit later, over here on page eight of the ALJ's opinion, the ALJ is looking again at allegations. She says she can't do any housework, she watches television all day, naps four times per day, three to four hours each time. Sounds like all she does is sleep. So the ALJ complains about that further down that page, about caring for the grandchildren, and apparently there's less that meets the eye there. Your Honor, I think the ALJ's decision demonstrates that he considered Ms. Fisher's testimony and did not let that go unacknowledged, yet found other evidence more persuasive, particularly the objective medical evidence, the opinion evidence, and Ms. Fisher's other inconsistent statements, as well as her receipt of unemployment benefits. The ALJ here, looking at the medical evidence, seemed to do it almost in a snapshot and not look at the entire record. And this disease, the sarcoidosis, is something that can be inconsistent. Your Honor, the ALJ looked at the body of evidence, including prior to Ms. Fisher's alleged onset date when she was working at substantial gainful activity levels. She was diagnosed with sarcoidosis in 2012. The ALJ seems to note is that there was no direct worsening of that condition in March 2014, as she alleges that she is now unable to work. And even the notion that she was taking time off from 2012 to 2014 because she was allowed time under FEMLA, her doctor doctor husband said that that FEMLA expired in April 2013, and even Ms. Fisher herself acknowledged that the record is not clear as to how much time she actually took off during that period.  And find that without a significant worsening of that condition, and in fact the opposite, a PET scan that showed a complete resolution, Dr. Naderadhan's statement that her sarcosis was clinically stable, statements that she was handling the medication well and tolerating it well, seem to contradict Ms. Fisher's statements that there was some reason in March 2014 that she went from being able to work to being unable to work with the same conditions. So should she have asserted an earlier onset date, in your view? I mean, I hate to punish people for being conservative with the onset date. Your Honor, I don't suggest that she should have chosen an earlier onset date. Rather, I think the record reflects, and the ALJ picks up on this point, that there didn't seem to be any flare-up, worsening event that happened in March 2014 that would explain why in January of 2014 she's working full-time, and yet in March of 2014 she doesn't. And I think the evidence actually shows the opposite. What about Dr. Naderadhan's clinical findings and records for that period? Because that's the most comprehensive medical evidence with respect to Ms. Fisher. And the ALJ, again, seems to look at things at specific points in time, but not over the full course. I understand Your Honor's point. It was a fairly lengthy record. The ALJ was not required to address examinations September 14, October 14, November 14, etc. That's true, but when focusing in on just a particular time period that might be contradicted by other medical evidence, the ALJ is not permitted to do that. I would agree, Your Honor. However, in this case, I believe the ALJ did not do that. In fact, noted when Ms. Fisher complained of pain, what pain she complained of. For example, abdominal pain. He acknowledged that she had had abdominal pain for years, and yet when her gastritis was treated more aggressively, she consistently said that her abdominal pain had improved. The ALJ did not find that Ms. Fisher's pain was unsubstantiated. I believe the ALJ rather looked fairly at the record as a whole and determined that Dr. Nadarajan's statements, Dr. Hasbin's statements, statements from her gastroenterologist and her pulmonologist, showed that her condition had not worsened and that, in fact, it had actually improved. Whether or not Dr. Nadarajan acknowledged the nerve damage within Ms. Fisher, it was the nerve damage causing the abdominal pain that eventually improved significantly with more aggressive treatment from her gastroenterologist. What about Dr. Nadarajan's opinion in January 2014 that she could not continue with her physical therapy regularly? That's January 2014. Sorry, I'm looking at that. I apologize, Your Honor. Is there a statement? AR 314. Your Honor, I understand that she could not continue. I see Dr. Nadarajan's statement on that particular day two months prior to Ms. Fisher's alleged onset date. However, she did recommend physical therapy later in the record for her muscle weakness, which she did not comply with. She stated under her HPI or her symptoms that she could not continue with physical therapy. There was no physical therapist record recommending that she not continue with physical therapy. It's the ALJ's job to look at Ms. Fisher's allegations and determine whether it comports with the rest of the evidence in the record. Right. I can't tell what the ALJ meant with the inconsistencies about the TV and then the ALJ asks about whether you're taking care of your grandchildren. She says the oldest grandchild is 18 now and then asks about younger grandchildren. She starts crying, so she has a two-year-old. She's reported that one of her physical therapy goals was to be able to take care of that grandchild, and then the topic just gets dropped. I would have thought that suggested that you couldn't rely on the fact that she's taking care of them because it's at least a mess. Your Honor, I understand your point. The ALJ, however, absolutely considers that in his discussion of the evidence but doesn't rely on that by any means. Which is maybe a problem because she apparently can't take care of her grandchildren and that was one of her physical therapy goals. And even if true, Your Honor, the ALJ did not base his decision on that fact alone. In fact, it is just one of many inconsistent statements he points to that Ms. Fisher made. More importantly, the bulk of the ALJ's discussion relies on the objective medical evidence, the opinion evidence, her receipt of unemployment benefits after she applied for disability, and other inconsistent statements that she made throughout the record. And the ALJ rejects the doctors, rejects Dr. Natarajan, rejects Dr. Hasbun, rejects the medical evidence. Your Honor, the ALJ reasonably gave little weight to the opinions of Dr. Natarajan and Dr. Hasbun for very valid reasons. Dr. Natarajan's opinion when asked if Ms. Fisher would need unscheduled breaks says, maybe, depending on her pain. Which could be a day-to-day comment to the point that Judge St. Eve has been making. There might be days with this kind of disease she doesn't need a break. There might be other days that she does. So wouldn't an honest doctor say maybe? Yes, Your Honor, however, the ALJ recognized that that is the vagueness of that opinion and not defining how often she would need these breaks, how long these breaks would last. How is the doctor supposed to know that? I mean, I feel like there's this culture clash here between what ALJs want and what doctors feel able to say. Well, Your Honor, in contrast to her statement that Ms. Fisher would need unscheduled breaks, Dr. Natarajan later said that she would need four days approximately off of work per month, a much more precise limitation, which the ALJ weighed and reasonably discounted based on the objective medical evidence and the other evidence of Ms. Fisher's statements. Okay, I think we need to wrap up now if you want to conclude. If this Court has no further questions, the Commissioner would respectfully request that they affirm the ALJ's decision. Thank you. Thank you very much. Mr. Richter. Thank you, Your Honor. I would just very quickly wrap up by saying that this Court has quite a few times found that people who are disabled will work, will try to work, and that doing so doesn't necessarily mean they're not disabled. Ms. Fisher was trying to work before really her condition sort of came to a head, and Dr. Natarajan actually suggested that she stop working. So I think the time before her alleged onset of disability, the absences, and then finally her stopping work permanently really bolsters rather than undermines Dr. Natarajan's opinion. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.